**UNITED STATES of America,**
**Appellee,**

v.

**Bobby HALLMAN, True Name Cornelius Lewis, Appellant.**

**No. 20303.**

United States Court of Appeals,
Eighth Circuit.

Feb. 16, 1971.

Stanley H. Roberts, Sr., Minneapolis, Minn., for appellant.

Robert G. Renner, U. S. Atty., Minneapolis, Minn., for appellee.

Before VAN OOSTERHOUT, GIBSON and LAY, Circuit Judges.

LAY, Circuit Judge.

This is a direct appeal from a conviction of armed robbery of a federally insured bank in Minneapolis, Minnesota, in violation of 18 U.S.C.A. § 2113(a) and (d). Defendant was found guilty of the charge and sentenced to the custody

of the Attorney General of the United States for 20 years. He appeals on the sole ground that the evidence used at trial was illegally seized in violation of his Fourth Amendment rights. The evidence in question consisted of eye glasses, a loaded gun and "bait" money,[1] found in the immediate vicinity of the defendant at the time of his arrest. The sole issue raised turns on whether the search was "reasonable" within constitutional limitations. We find no merit in defendant's arguments. We affirm the conviction.

The First Plymouth National Bank in Minneapolis, Minnesota, was held up by two men at approximately 12:30 p. m. on December 22, 1969. One of the men, wearing dark rimmed eye glasses with green paint on his face, went to a teller's cage, pulled a pistol and demanded that money in the teller's drawer be placed in a paper bag. At the trial the teller and two other bank employees identified the defendant as the man holding the gun. This identification was corroborated by a minister who talked to the defendant while standing in line at the teller's cage before the robbery was committed. The secretary of the bank president recognized the defendant as a man whom she had seen in the presence of a girl by the name of Lolita. The secretary also recalled that the robber had been in a fight with a man named Tommy Floyd. Police investigation discovered that the robber's name was "Bobby" and that he had been arrested by the police in early October. Hallman's picture was then obtained from the police files and shown along with others to the bank employees. Although one of the employees could not verify the identification from the photograph, at least two of them did.

The defendant was arrested at 10:30 p. m. the evening of the robbery at the apartment of one Douglas Laird. He was traced to Laird's apartment on the basis of a tip from a confidential source. At the time of the arrest the police entered the lower hallway leading to Laird's apartment. They asked Laird, who met them at the door, if Hallman was there Laird told them "yes." The police entered the apartment with guns drawn and made the arrest. A pool table as approximately four to five feet away from the couch on which Hallman was lying at the time of the arrest. After Hallman had been secured, the officers asked Laird if they could search the premises. Laird told them that they could and suggested they look in and about the nearby pool table.[2] The police found the gun and the money in the pockets of the pool table. The glasses, which were identified to be similar to ones worn by the robber at the bank, were found on a nearby coffee table.

■ There can be little doubt that the police had probable cause to enter Laird's apartment and make the arrest. Positive identification of Hallman had been made by eye witnesses to the crime. The right to make the arrest turns on Minnesota law. Section 629.34 of the Minnesota Stat.Ann. authorizes a police officer, without a warrant, to arrest a person "[w]hen a felony has in fact been committed, and he has reasonable cause for believing the person arrested to have committed it * * *." If the officer is refused admittance to the premises he may even break open an outer or inner door or window of a dwelling house to effect an arrest under these circumstances. Such an arrest procedure has been recognized to be constitutionally permissible. See Ker v. California, 374 U.S. 23, 36, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963).

■ The search was conducted with express permission and consent by the

---

1. Three $20 bills included in the roll of money seized matched the serial numbers of bills taken from the bank.

2. Laird testified that Hallman had placed the loaded pistol and the roll of money on a nearby table. Before leaving the apartment for a short time Laird had placed these items in the pockets of the pool table because his children were present in the apartment.

owner of the apartment. See Wright v. United States, 389 F.2d 996 (8 Cir. 1968). Notwithstanding this consent, however, at the time of the arrest the officers were within their right and duty to search not only the defendant, but the area within the defendant's "immediate control" as well. This covers any reasonable area which the defendant might reach in order to gain possession of a weapon or destructible evidence. Chimel v. California. 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); In re Kiser, 419 F.2d 1134 (8 Cir. 1969).

We have read the entire record of the trial and find no error in the proceedings.[3] We are additionally satisfied there exists substantial evidence on which the jury could determine the defendant's guilt.

Judgment affirmed.

3. At trial, the police lineup held after the arrest was challenged as being in violation of due process. Although this issue is not raised on appeal, we have examined the record in that regard. We have examined the photograph of the lineup and the proceedings which took place, and we find no basis on which the lineup or the in-court identifications can be successfully challenged. Cf. United States v. Ranciglio, 429 F.2d 228 (8 Cir. 1970); Searles v. Minnesota, 428 F.2d 1188 (8 Cir. 1970).