**Bobby HALLMAN, Appellant,**

v.

**UNITED STATES of America, Appellee.**

No. 73–1736.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 14, 1973.

Decided Dec. 18, 1973.

---

Bobby Hallman, pro se.

Robert G. Renner, U. S. Atty., and Francis X. Herman, Asst. U. S. Atty., Minneapolis, Minn., for appellee.

Before GIBSON and ROSS, Circuit Judges, and TALBOT SMITH,* Senior District Judge.

PER CURIAM.

A jury found petitioner guilty of armed robbery of the First Plymouth National Bank, Minneapolis, Minnesota, in violation of 18 U.S.C. § 2113(a) and (d). The Honorable Earl R. Larson, United States District Judge, District of Minnesota, sentenced petitioner to 20

---

* The Honorable Talbot Smith, Senior Disrtict Judge, Eastern District of Michigan, sitting by designation.

years imprisonment, and his conviction was upheld by this court. United States v. Hallman, 438 F.2d 94 (8th Cir. 1971). Petitioner filed this Section 2255 proceeding pursuant to 28 U.S.C. § 2255, seeking to vacate his sentence. Judge Larson denied relief without a hearing. This appeal followed.

Petitioner raises three arguments: (1) his conviction should be reversed since it was based on the purportedly perjured testimony of a Government witness, Mildred A. Miller, in conspiracy with a Government informer; (2) the District Court erred in admitting a photograph of defendant showing him with a prison identification number, which denied him a fair trial and forced him to testify in violation of the Fifth Amendment; and (3) the absence of blacks on the grand and petit juries constituted systematic racial discrimination in violation of the Due Process and Equal Protection Clauses. Rejecting these arguments, we affirm the District Court's denial of habeas corpus relief.

■ Petitioner first claims that Mildred A. Miller, an employee of the bank and a Government witness, who identified petitioner, conspired with a Government informer, Tommy Floyd, "to frame" petitioner. Petitioner submitted a hearsay affidavit of Lolita Richardson to the District Court, which we have reviewed, stating that Miller perjured herself to revenge Floyd's preference for Richardson's affections. Petitioner claimed at the District Court and here that Richardson first told him on the alleged perjury while he was incarcerated pending our decision on the direct appeal, that the petitioner informed his attorney, and that his attorney informed the District Attorney of the purported perjury. The defendant does not argue that the prosecuting attorney

knew of the alleged perjury at the time Miller testified.

In United States v. Holt, 303 F.2d 791, 794 (8th Cir.), cert. denied, 372 U. S. 970, 83 S.Ct. 1095, 10 L.Ed.2d 132 (1962), we stated:

■n order to vacate the judgment and sentence on such grounds, two elements must be established: first, the use of perjured testimony, and, second, knowledge by the prosecuting officials *at the time the testimony was used* that it was perjured. [emphasis added] [citations omitted].

Petitioner does not claim that the Government knew of the allegedly perjured testimony at the time Miller testified. Richardson, in her affidavit, does not state that she informed anyone at the time of the trial of the purported perjury by Miller. Assuming for the sake of this argument that Miller perjured herself, petitioner has not stated that the Government knew of the perjury at the time it was allegedly committed. He, therefore, is not entitled to relief on this issue.[1]

■ In addition, Richardson's affidavit should be viewed with appropriate skepticism. Richardson, fiancée of petitioner at the time of his trial, failed to come forward during trial with this information on the alleged perjury. With petitioner now found guilty, we are strained to believe the truth of Richardson's belated, hearsay accusations concerning Miller's truthfulness. Further, we think, as did the District Court, that even if Miller's testimony was totally discounted, there was substantial evidence from which the jury could have reached the same verdict. A bank teller, a bank bookkeeper, and a minister bank customer all identified petitioner as the bank robber. Another witness testified concerning petitioner's possession of a

---

1. Although the petitioner does not raise the issue that Richardson's affidavit concerning Miller's alleged perjury constitutes newly discovered evidence, we agree with the Government that such "evidence" cannot be grounds for reversal. This "evidence" would probably not produce an acquittal, and therefore a new trial should not be granted under these circumstances. United States v. McWilliams, 421 F.2d 1083, 1084–1085 (8th Cir.), cert. denied, 397 U.S. 1070, 90 S.Ct. 1515, 25 L.Ed.2d 694 (1970).

large sum of money, which was proved to be the bank's "bait" money. In this regard, Miller's identification of petitioner was only cumulative evidence.

Second, petitioner claims that the admission of a photograph of himself showing a prison identification number denied him a fair trial, forced him to testify in violation of the Fifth Amendment, and was reversible error. The photograph had been used by the FBI for purposes of identification when interviewing witnesses immediately after the robbery. At trial, petitioner's counsel during cross-examination asked Barbara A. Scott, a bank teller, about the photograph. On redirect examination, the Government had the photograph marked, and the District Court admitted it. No comment was made during trial concerning the prison identification number. Petitioner's counsel at trial did not object to the admission of the photograph, and this issue was not raised on direct appeal. Defendant had not taken the stand at the time of the photograph's admission.

■■ Normally we would not review issues not timely raised on appeal. Glouser v. United States, 296 F.2d 853, 857–858 (8th Cir. 1961), cert. denied, 369 U.S. 825, 82 S.Ct. 840, 7 L.Ed.2d 789 (1962). However, since petitioner claims that his court-appointed attorney on direct appeal informed petitioner that this issue would be raised, since the issue was not raised, and since it merits discussion, we will consider it.

■ We think it would have been advisable for the photograph to have been admitted with the prison identification number blocked out. However, no objection was made, nor was this fact specifically called to the court's attention. In fact, no one even commented on the identification number. However, the admission of the photograph was permissible to rehabilitate Scott's testimony concerning the identification of the petitioner. Mullins v. United States, 487 F.2d 581, 589–590 (8th Cir., 1973).

Petitioner's claims that the admission of the photograph forced him to take the stand in violation of the Fifth Amendment and that his character was improperly put in issue do not call for vacating his sentence. First, no objection was made at trial concerning the admission of the photograph and, in particular, the presence of the prison identification number. Second, we, as the District Court, are "not persuaded that [petitioner] took the stand for the purpose of offsetting the inference to be drawn from the markings on the photograph." Third, no comment was made at trial concerning the prison identification number. We are convinced that the petitioner was not denied the substance of a fair trial, so as to demand relief on this issue. Glouser v. United States, 296 F.2d at 856.

■ Third, petitioner asserts that blacks were systematically excluded from the grand and petit juries in violation of the Due Process and Equal Protection Clauses of the Fourteenth Amendment. The District Court held on this issue:

In the present case the jury was chosen pursuant to 28 U.S.C. § 1861 *et seq.* These Federal laws, in conjunction with the local court plan, provide for random selection of Federal jurors from the voting lists and voting cards throughout the State of Minnesota. Those chosen are anonymous to those administrators who carry out the selection process. Every four years following the national elections a new list of jurors is compiled, to keep the list current. Under this system it is not possible to say that there exists systematic exclusion of any race. On the contrary, the race of any potential juror is unknown at the time that person's name is drawn for the master jury list. Petitioner has neither alleged nor demonstrated any statistical disparity between those minority persons qualified to be jurors and those minority persons who actually serve as jurors.

This statement fully responds to petitioner's bare assertion that blacks were systematically excluded from the grand and petit juries.

■ Further, absent a showing of systematic exclusion of a class of qualified citizens, voter registration lists may be used as the only source of persons to serve on grand and petit juries. *E. g.*, United States v. Parker, 428 F.2d 488, 489 (9th Cir.), cert. denied, 400 U.S. 910, 91 S.Ct. 155, 27 L.Ed.2d 150 (1970); United States v. Butera, 420 F.2d 564, 573 (1st Cir. 1970); Camp v. United States, 413 F.2d 419, 421 (5th Cir.), cert. denied, 396 U.S. 968, 90 S.Ct. 451, 24 L.Ed.2d 434 (1969); United States v. Kroncke, 321 F.Supp. 913, 914–916 (D.Minn.1970). The District Court's explanation of the jury selection process in Minnesota dispels any question that any class of qualified citizens is systematically excluded from jury service.

The District Court's denial of relief is affirmed.