**UNITED STATES of America,**
**Appellee,**

v.

**Whitney Paul KILLS CROW,**
**Appellant.**

**No. 75–1567.**

United States Court of Appeals,
Eighth Circuit.

Submitted Dec. 11, 1975.

Decided Dec. 24, 1975.

John T. Hughes, Morman, Smit & Shepard, Sturgis, S. D., for appellant.

William F. Clayton and Larry M. Von Wald and Bruce W. Boyd, Asst. U. S. Attys., Sioux Falls, S. D., for appellee.

Before ROSS, STEPHENSON and WEBSTER, Circuit Judges.

PER CURIAM.

In this appeal, Whitney Paul Kills Crow challenges his convictions of assault with a dangerous weapon in violation of 18 U.S.C. § 1153 and S.D.C.L. § 22–18–11 and of use of a firearm in the commission of a felony in violation of 18 U.S.C. § 924(c)(1). Appellant contends that the District Court[1] erred in refusing to allow him to introduce evidence concerning the Indian concept of "Toka" on the issues of provocation and justification. "Toka", as explained by appellant, is a concept which, in its application, results in Indians of one reservation treating Indians from a different reservation as outcasts and enemies simply because of the fact that they are "foreigners".

Appellant shot one Rudolph Vargas in the leg on March 4, 1975, outside the home of Dale Bissonette on the Pine Ridge Indian Reservation, South Dakota. Appellant approached the Bissonette house that day, called for Vargas to come outside, and, when he did, shot Vargas in the leg. At trial, appellant's defense was that Vargas and other Indians had harassed and abused him and his family to such an extent that the shooting was provoked by Vargas's own actions. He made an offer of proof concerning the "Toka" concept, claiming that an explanation of the concept would help the jury understand his reasons for shooting Vargas. He proposed to explain the issue to the jury through the use of an expert witness. The District Court rejected the offer because it felt that no proper foundation had been laid for such evidence. In so doing, the District Court said in chambers:

Well, we have got the offer of proof as to the toka or their feeling in the community. I am not going to let that testimony in. As far as what abuse this family may have had, not just imagined, but actual abuse, threats, or anything of that nature, of course, I think that is admissible. I think it's admissible even though it might not fall within the instructions of self-[defense]. Still I think they are allowed to put it in, whatever degree that is.

\* \* \* \* \* \*

Aren't we talking about a problem also of foundation? Now, assume for a moment—I don't know that this is the situation. I am just generally discussing this. Assume for the moment that the Defendant were able in all truth to say that he had been considered as an outsider, that he had been threatened and that he had been pushed around, and maybe his home or his person had been threatened or the person of his family had been threatened and that the reason for it was toka. Then he would be able to explain that he was in fact a person considered as a toka, as you say, and this might go to his frame of mind. But it would have to be, I think, tied to an actual, legitimate concern and fear, Number 1; Number 2, that the individual who had been shot was part of this activity or part of this threat to the home or to the person of the Defendant or his family.

But just starting out with a theory, reversing it and saying because he is a toka that he then has the right to fear, that would be putting it backwards. If he had threats, actual threats, and fear based upon certain acts of the victim—for lack of a better word, we will call him the "victim,"—and if he decided and said, "Look. I have been threatened and this man was threatening me now and I decided not to have it happen on my homeground and pursued it until he stopped

---

1. The Honorable Andrew W. Bogue, United States District Judge for the District of South Dakota.

threatening my family or my home," that would be another thing.

I am afraid we have foundation problems. I don't know how you can get into it with the toka concept except by way of explaining that's why they were doing certain things to him, insofar as there has been no evidence that they in fact have threatened him.

\* \* \* \* \* \*

What I am saying at this point is there doesn't seem to be sufficient foundation for any introduction of any toka concept. If in fact aggressive acts by another individual have or would appear to threaten, as I say, threaten the Defendant in this case, his home, relatives, his family or himself, and that he believes the reason for this is so and so and that was in his mind, and that an act was committed by the victim which caused him to believe that he had to take steps to defend himself, those are facts. I don't even have any idea that exists at this point because I don't know. No evidence has been put on.

Until or unless such a situation does develop, I have got to deny it.

Again, maybe we are a little premature in crossing that bridge. You have suggested that this is what you want to do and you have done it in the form of an offer of proof. I would only say that under the present situation I would have to sustain an objection to that type of testimony about toka coming in just out of the clear, blue sky.

\* \* \* \* \* \*

In other words, I don't believe he can say, "I am a toka; therefore, I have a right to be suspicious and fearful."

I think, first of all, there must be testimony he was threatened and that

a reasonable person under these same circumstances would feel fear, and then this would be giving you some foundation possibly for testimony by [the expert], if he has in fact experienced as to how people are now treated down there; that is, not members of the Tribe, they weren't born or raised down there, or something of that nature. That would be my reaction to it at this point.

As I say, we may be a little premature. My ruling will be to sustain an objection concerning discussion of toka unless proper foundation is laid.

Appellant did not take advantage of the opportunity the District Court gave him to lay the proper foundation and, thus, the evidence on "Toka" was never admitted. At trial, the appellant was not limited in developing testimony on abuse and harassment. It is difficult to understand how evidence of the "Toka" tradition could have been more than cumulative evidence of the appellant's state of mind. In any event, no foundation was laid on the record to show the application of "Toka" to the facts of this case.

 The admission of evidence lies in the sound discretion of the trial court. *Bond v. Local 823, Teamsters,* 521 F.2d 5, 10 (8th Cir. 1975); *Lowry v. Black Hills Agency, Inc.,* 509 F.2d 1311, 1313–14 (8th Cir. 1975). A district court decision on matters concerning the admissibility of evidence will be overturned on appeal only if the court has abused its discretion. *United States v. Skillman,* 442 F.2d 542, 551 (8th Cir.), *cert. denied,* 404 U.S. 833, 92 S.Ct. 82, 30 L.Ed.2d 63 (1971). Here, the District Court did not abuse its discretion in requiring a proper foundation to be laid.[2]

The judgment of the District Court is affirmed.

---

2. It follows that appellant was not denied a constitutional right, as he additionally claims, to call witnesses in his own behalf under the Sixth Amendment. The District Court expressed reservations about the relevancy of the testimony; it in no way precluded Kills Crow from calling any witnesses or from establishing a basis for admission of the "Toka" evidence.