UNITED STATES of America, Appellee,

v.

William E. BOWLES, Appellant.

No. 78–1032.

United States Court of Appeals, Eighth Circuit.

Submitted April 10, 1978.

Decided May 1, 1978.

Thomas M. Bradshaw, Asst. Federal Public Defender, Kansas City, Mo., for appellant.

Anthony P. Nugent, Jr., Asst. U. S. Atty., Kansas City, Mo., for appellee.

Before MATTHES, Senior Circuit Judge, HEANEY, Circuit Judge, and MacLAUGHLIN,* District Judge.

MATTHES, Senior Circuit Judge.

William E. Bowles, a black person, was indicted, tried, and found guilty of distributing phencyclidine (commonly known as PCP or "Angel Dust"),[1] a Schedule III substance, in violation of 21 U.S.C. § 841(a)(1). Imposition of sentence of imprisonment was suspended and defendant was placed on probation for a period of two years conditioned on his participation in a drug rehabilitation program and submission to chemical testing at the discretion of the United States Parole Officer.

On appeal from the judgment, defendant seeks reversal and remand for another trial for: (1) failure of the district court to voir dire the jury panel regarding racial prejudice; (2) failure of the district court to properly instruct the jury; and (3) improper argument of the Assistant United States Attorney regarding the availability to defendant of a government informant.

■ We hold that the defendant was denied a fair trial because the district court refused to ascertain whether any of the prospective jurors would be influenced in arriving at a verdict because the defendant was a Negro.

Before addressing the critical issue just noted, we briefly review the pertinent facts. The prosecution was bottomed on the purported purchase from the defendant on or about June 18, 1977, of a quantity of Angel Dust by William J. Wilson, a Kansas City, Missouri police officer assigned to the Drug Enforcement Administration. A government informer, a government surveillance agent, and a disinterested party were involved in or witnessed the alleged transaction. There was sharp disagreement as to whether the defendant sold the Angel Dust. The government's only witnesses were DEA Agent Wilson, who testified that he made the purchase, and a chemist who analyzed the controlled substance. Defendant, who had not been previously convicted of any crime, and the disinterested party unequivocally controverted Wilson's testimony. Neither the government surveillance agent nor the government informer testified.

Initially, we review the proceedings which mandate our reversal and remand.

The district court extensively interrogated the jury panel.[2] Near the conclusion of the voir dire, the following occurred:

THE COURT: I will ask you, first, Mr. Newman, [Assistant U. S. Attorney] do

---

* The Honorable Harry H. MacLaughlin, United States District Judge for the District of Minnesota, sitting by designation.

1. The record shows that the term Angel Dust sometimes refers to marijuana soaked or laced with phencyclidine.

2. Apparently the Assistant United States Attorney and the court-appointed attorney for the defendant had suggested questions to be propounded to the jury panel by the judge.

you have any additional voir dire questions you would like to have asked?

MR. NEWMAN: No, Your Honor.

MR. BRADSHAW [Attorney for Defendant]: Only two matters, Your Honor. I forgot to tell the court that Anthony Metaxes will be with me at the counsel table.

THE COURT: I am sure no one knows him.

MR. BRADSHAW: And secondly, I forgot to include among my voir dire questions a question concerning whether the fact that the defendant is a member of the Negro race—

THE COURT: I am not going to ask that. I just feel that I—I may be unfair to you, but I feel that would put undue emphasis on it. I have told them to weigh their own conscience and I believe if they are racially prejudice[d] they ought to come forth and say it; and if they are, they are not going to respond if I ask them. That is just the way I feel about it. I understand your concern but I feel it is better for you.

In denying appellant's post-trial motions, the court seemed to regard abuse of discretion as the vital, if not the controlling, standard and concluded it had not abused its discretion in refusing to voir dire the panel on the racial issue. Neither did such refusal, as the judge viewed the matter, violate the essential demands of fairness nor result in prejudice to the defendant. The court cited one case to support its position, *United States v. Brown*, 540 F.2d 364 (8th Cir. 1975). *Brown* is not controlling in that it involved the scope and manner of voir dire on the impact of pre-trial publicity. The race or national origin of the defendant was not an issue in *Brown*.

Fed.R.Crim.P. 24(a) provides that the court may permit the defendant or his attorney and the attorney for the government to conduct the examination of prospective jurors, or may itself conduct the examination. Clearly, Rule 24(a) is designed to provide the framework for the procedure to be pursued in the examination of prospective jurors. Under the Rule the district

judge is vested with and should exercise his discretion in deciding how the voir dire will be conducted. The courts have, in effect, so held. *United States v. Bell*, No. 77–1894, 573 F.2d 1040 (8th Cir. April 19, 1978); *United States v. Brown, supra* at 378; *United States v. Bear Runner*, 502 F.2d 908 (8th Cir. 1974); *Pope v. United States*, 372 F.2d 710, 726 (8th Cir. 1967), *vacated on other grounds*, 392 U.S. 651, 88 S.Ct. 2145, 20 L.Ed.2d 1317 (1968), *cert. denied*, 401 U.S. 949, 91 S.Ct. 953, 28 L.Ed.2d 232 (1971).

But it by no means follows that where, as here, the defendant is a Negro, the district judge may with impunity refuse to make appropriate inquiry of the jury panel as to possible racial bias, and then justify such refusal by asserting the exercise of discretion. Forty-seven years ago the Supreme Court of the United States, in an opinion authored by Chief Justice Hughes, announced the governing rule. The closing part of the opinion is particularly apropos:

The argument is advanced on behalf of the Government that it would be detrimental to the administration of the law in the courts of the United States to allow questions to jurors as to racial or religious prejudices. We think that it would be far more injurious to permit it to be thought that persons entertaining a disqualifying prejudice were allowed to serve as jurors and that inquiries designed to elicit the fact of disqualification were barred. No surer way could be devised to bring the processes of justice into disrepute.

*Aldridge v. United States*, 283 U.S. 308, 314–15, 51 S.Ct. 470, 473, 75 L.Ed. 1054 (1931).

The courts of appeals have consistently adhered to the teachings of *Aldridge*. In *United States v. Powers*, 482 F.2d 941, 944 (8th Cir. 1973), *cert. denied*, 415 U.S. 923, 94 S.Ct. 1426, 39 L.Ed.2d 479 (1974), this court proclaimed:

For more than four decades, it has been the rule in federal courts that a trial court *must* inquire as to possible racial bias of the veniremen when the defendant is a member of a racial minority.

*Aldridge v. United States*, 283 U.S. 308, 51 S.Ct. 470, 75 L.Ed. 1054 (1931). Yet, as recently noted by the Supreme Court in *Ham v. South Carolina*, 409 U.S. 524, 93 S.Ct. 848, 35 L.Ed.2d 46 (1973), neither the supervisory power of the Supreme Court over lower federal courts as exercised in *Aldridge* nor the Due Process Clause of the Fourteenth Amendment as applied to the state courts in *Ham* require the trial court "to put the question in any particular form, or to ask any particular number of questions on the subject, simply because requested to do so by petitioner." 409 U.S. at 527, 93 S.Ct. at 830. (emphasis in original).

*See also United States v. Bear Runner, supra* at 911 ("a searching voir dire is a necessary incident to the right to an impartial jury"); *United States v. Booker*, 480 F.2d 1310 (7th Cir. 1973) (refusal to interrogate prospective jurors regarding possible racial prejudice against a black defendant not harmless error despite overwhelming evidence of guilt and five black jurors); *United States v. Carter*, 440 F.2d 1132 (6th Cir. 1971) (failure to inquire regarding potential racial prejudice of prospective jurors in the trial of a Negro defendant upon request of defense counsel was reversible error despite substantial evidence of guilt); *King v. United States*, 124 U.S.App.D.C. 138, 362 F.2d 968 (1966) (refusal to inquire regarding racial prejudice of prospective jurors when complaining witness was white and defendants were black was plain error).[3]

We have accorded due consideration to the attempt of the government to justify the court's voir dire examination. Essentially, the government's position is that no abuse of discretion appears, and that the defendant showed no special circumstances which "would require an inquiry into the racial prejudice of the veniremen." Under the authorities cited herein, the rationale of the government will not stand scrutiny; hence, we have no choice but to reverse and remand for another trial.

Inasmuch as the case must go back to the district court for another trial, we pretermit discussion of defendant's contentions that the court prejudicially erred in failing to give requested instructions. By and large, the refused instructions, with the exception of No. 24, were focused upon matters which seemingly were covered by the court's charge considered as a whole. In any event, the evidence on retrial will shape the form and substance of the court's instructions, and we are satisfied that the district court will give instructions adequately and correctly delineating the applicable legal principles, and thus the jury will be properly guided in deliberating upon the evidence and in arriving at a just verdict.

Instruction No. 24 submitted the failure of the government to produce Charles Myrick, the informant, as a witness, and informed the jury that the failure to produce the informant, who was peculiarly within the power of the government to produce, "may give rise to the inference that his testimony would be unfavorable to the government." In connection with this instruction, and in order to clarify the situation, we take occasion to observe that on October 21, 1977, The Honorable Elmo B. Hunter, United States District Judge, who did not preside over the trial of this case, entered an order in response to defendant's motion for a bill of particulars. The order recited that the defendant had been provided access to the government's file which, except for the name and address of an

---

**3.** The government reasons that the voir dire inquiry requested by the defense was not constitutionally mandated. We agree that voir dire questions are not *constitutionally* required unless the circumstances in the case "suggest a significant likelihood that a racial prejudice might infect [the defendant's] trial." *Ristaino v. Ross*, 424 U.S. 589, 598, 96 S.Ct. 1017, 1021, 47 L.Ed.2d 258 (1976); *see also Ham v. South Carolina*, 409 U.S. 524, 93 S.Ct. 848, 35 L.Ed.2d 46 (1973). Under the supervisory power of the federal appellate courts, however, federal district courts do have a *nonconstitutional* duty to pose appropriate questions as to possible racial bias of prospective jurors when the defendant is a member of a racial minority group. *See Aldridge v. United States, supra* ; *Ristaino v. Ross, supra* at 597 n. 9, 96 S.Ct. 1017; *United States v. Bell, supra,* slip op. at 1043.

informant, contained all information requested in defendant's motion; and that government counsel verbally had revealed to defendant's counsel the name of the informant and had agreed further to make the informant available to defense counsel for an interview at a convenient time. Thereupon, the court declined to grant the motion for a bill of particulars. The file further makes it clear that counsel for the defendant did know the name of the informant, Myrick, but that the Assistant United States Attorney in charge of the prosecution refused to disclose the address of the informant because the informant had stated that he faced "possible physical harm or death from his exposure as an informant." We also glean from the record that Myrick was in the office of the Assistant United States Attorney several days before the trial commenced, but refused to talk to the attorney for the defendant. It appears further that the government subsequently made an effort to locate Myrick at his last known address and at his last place of employment, but Myrick was not located and apparently had disappeared.

During the course of the closing argument of counsel for the government, the absence of informant Myrick became the subject of a rather heated discussion between the Assistant United States Attorney and counsel for the defendant. The court engaged in the colloquy and instructed the prosecutor to refrain from informing the jury that Myrick was equally available to the defendant and that the defendant should have procured or at least attempted to secure Myrick's presence at the trial. We think the court handled the matter properly. In the event the case is tried again, however, the United States Attorney should conscientiously attempt to locate Myrick and subpoena him or take other appropriate action to insure that he will be present in court during the trial so that the defendant may subject Myrick to an examination.

Reversed and remanded.