UNITED STATES of America, Plaintiff,

v.

Everett Carl WHITE LANCE, Defendant.

CR. 79–30015–01.

United States District Court,
D. South Dakota, C. D.

Dec. 11, 1979.

James H. Reynolds, (From Northern District of Iowa), Cedar Rapids, Iowa, for plaintiff.

J. M. Grossenburg, Winner, S. D., for defendant.

## MEMORANDUM OPINION

### CASE SUMMARY

DONALD J. PORTER, District Judge.

This Memorandum Opinion deals with a number of pre-trial motions made by defendant, who was indicted for first degree murder on July 12, 1979. On August 22, 1979, defendant moved to dismiss the indictment against him on the grounds that petit jury selection in the Central Division of the District of South Dakota did not contain a fair cross section of the community. A similar motion involving the grand jury selection procedure was made on August 29, 1979. This Court took the view that the motions and attached affidavits made a sufficient showing under 28 U.S.C. § 1867 to allow defendant access to the records of the Clerk of this Court pertaining to jury selection, and ordered that these records be made available to him.

Defendant also moved on November 13, 1979, that this Court order that the body of the man defendant allegedly murdered be exhumed, and that a pathologist be appointed to examine the corpse. A hearing was held on all of these motions on November 30, 1979. As announced at the conclusion of the hearing, each motion is denied, and the Court having indicated its intention to do so at that time, files this Memorandum.

WHETHER THE SOUTH DAKOTA MODIFIED PLAN FOR THE SELECTION OF GRAND AND PETIT JURORS SATISFIES THE STANDARDS OF EQUAL PROTECTION, THE SIXTH AMENDMENT, AND 28 U.S.C. § 1861 ET SEQ.?

The standards by which jury selection procedure are to be judged vary somewhat depending on whether the procedure is challenged under the Sixth Amendment or equal protection. As stated by the Supreme Court in *Duren v. Missouri*, 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979), the elements of a prima facie violation of the Sixth Amendment are:

(1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community, and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

439 U.S. at 364, 99 S.Ct. at 668. These standards are functionally equivalent to those under 28 U.S.C. § 1861. *United States v. Smith*, 463 F.Supp. 680 (E.D.Wis. 1979); *United States v. Test*, 550 F.2d 577 (10th Cir. 1976); *see also Taylor v. Louisiana*, 419 U.S. 522, 528–30, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975).

The standards under equal protection, particularly the third element, are somewhat stricter:

> The first step is to establish that the group is one that is a recognizable, distinct class, singled out for different treatment under the laws, as written or as applied . . . Next the degree of under-representation must be proved, by comparing the proportion of the group in the total population to the proportion called to serve as grand jurors, over a significant period of time . . . Finally . . . a selection procedure that is susceptible of abuse or is not racially neutral supports the presumption of discrimination raised by the statistical showing.

*Castaneda v. Partida*, 430 U.S. 482 at 494, 97 S.Ct. 1272 at 1280, 51 L.Ed.2d 498 (1977).

■ Taking the attack on the petit jury selection procedure first, the Court must note that defendant himself conceded at the hearing that Indians, the distinct group defendant alleges is under-represented on both petit and grand juries, "are fairly well represented on petit juries in the Central Division". Defendant is correct. According to the 1970 census figures provided by him, the Indian population of the Central Division is approximately 15.6% of the whole.[1] Since the current Jury Selection Plan went into effect in 1977, defendant reports that Indians have constituted 8.4% of the petit juries in the Central Division, thus showing an underrepresentation of 7.2%. As innumerable cases have held, "a defendant in a criminal case is not constitutionally entitled to demand a proportionate number of his race on the jury which tries him". *United States v. Whiting*, 538 F.2d

220, 222 (8th Cir. 1976). In *Swain v. Alabama*, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), 26% of those eligible for jury service were Negroes, while the venires contained only 10 to 15% Negroes. In holding the discrepancy permissible, the Court said that "purposeful discrimination based on race alone is [not] satisfactorily proved by showing that an identifiable group in a community is underrepresented by as much as 10%". 380 U.S. at 208–9, 85 S.Ct. at 829. Considering that the disproportion here is only 7.2%, this Court must rule that defendant's petit jury attack has failed in the second element of the prima facie case under both equal protection and Sixth Amendment tests: there has been no showing that the representation of the "distinctive" group is not fair and reasonable. Further, defendant has not even suggested how the petit jury selection fulfills the third element, that this alleged under-representation is "due to systematic exclusion of the group in the jury selection process" or that the selection procedure is "susceptible of abuse or is not racially neutral".

The essence of defendant's grand jury attack is that the method, under the Plan, of selecting grand juries state-wide, from all four divisions in the District of South Dakota, unfairly dilutes the representation of Indians. State-wide, by defendant's 1970 census figures, Indians accounted for 4.86% of the total population.[2] The average number of Indians called on grand jury panels since the implementation of the Plan has been, according to defendant's figures, 3.8%. Defendant contends that allowing a grand jury so constituted to return indictments in the Central Division, where the Indian population is approximately 15.6%,

---

1. Defendant asserts that the merger in 1979 of what was formerly Washabaugh County, in the Western Division, with Jackson County, in the Central Division, raises the Indian proportion to 16.3%. This does not alter the ruling of this Court for at least two reasons. First, the lines of the Divisions in this District were drawn by Congress, 28 U.S.C. § 122, and it is doubtful that they can be altered by a vote of the residents of the counties. Second, even with the addition, the proportion of Indians on the petit jury is constitutionally acceptable.

2. Defendant has also submitted a 1979 survey by the Bureau of Indian Affairs which indicates that the total number of Indians in the state has increased since 1970, and compares this with 1970 totals to show the Indian population to be 6.37%. This, however, fails to take into account changes in the total population since 1970, and must be considered unreliable for that reason.

violates defendant's right to a grand jury composed of a fair cross-section of the community.

■ It should be pointed out that in 1966, F.R.Crim.P. 18 was amended to allow the prosecution of criminal offenses in any division of the district in which it occurred. Correspondingly, 28 U.S.C. § 114, which had required that the prosecution be brought in the particular division where the crime was committed, was deleted. The constitutionality of Rule 18 is not open to question, *see United States v. Brown*, 535 F.2d 424 (8th Cir. 1976), citing *United States v. Anderson*, 328 U.S. 699, 66 S.Ct. 1213, 90 L.Ed. 1529 (1946), and it simply does not follow that even though a prosecution may be brought anywhere in a state, the grand jury that hands down the indictment must be drawn from a particular division.[3]

An argument analogous to defendant's contention here was made under 28 U.S.C. § 1861 in *United States v. Cates*, 485 F.2d 26 (1st Cir. 1974). There, defendant was indicted by a grand jury drawn from a division different from that in which the crime was committed and different from that in which the defendant was arraigned. The court stated that

In light of the legislative purpose, statutory history, and Rule 18, we are unable to construe 28 U.S.C. § 1861 otherwise than as requiring only that when the court convenes in a division for a sitting of the grand jury, the grand jurors must be randomly (and in other respects appropriately) selected from that division. There is no requirement that they must come from the same division where a trial is later to take place or where the offense was committed.

485 F.2d at 29. *See also United States v. Joyner*, 494 F.2d 501 (5th Cir. 1974), cert. denied 419 U.S. 995, 95 S.Ct. 308, 42 L.Ed.2d 268 (1974); *United States v. Grayson*, 416 F.2d 1073 (5th Cir. 1969), cert. denied 396 U.S. 1059, 90 S.Ct. 754, 24 L.Ed.2d 753 (1970); *Jeffers v. United States*, 451 F.Supp. 1338 (N.D.Ind.1978). If a defendant can be permissibly indicted by a grand jury which is drawn entirely from a division different from that in which the crime took place, it cannot be argued that a grand jury which gives proportional representation to the division in which the offense occurred as well as to all other divisions in the district does any harm to a defendant's right to a fair cross-section of the community.

■ Given the close similarity of tests under § 1861 and equal protection in this regard, there is no perceptible reason why this Court should find that the dictates of equal protection give a defendant any more protection than § 1861. Certainly, the Supreme Court cases laying down the equal protection requirement that grand jury panels be fairly representative of the community from which they are selected have never sought to give a precise definition of what constitutes an acceptable "community". The cases say only that any distinct group in the community from which the grand jury is called must be proportionately represented on the panel, not that any particular representative community is to be preferred over another.

It seems clear that Congress was acting within proper constitutional limits in enacting § 1861 when, in "order to achieve a working balance between a fair representation of various groups on juries and a manageable system of selecting jurors [,it] chose a *district* or division *based plan*". *United States v. Brady*, 579 F.2d 1121 (9th Cir. 1978), citing 1968 U.S.Code Cong. & Admin. News, pp. 1792, 1793. (Emphasis supplied). So long as the grand jury was properly selected from the community which it rep-

---

**3.** Even under the predecessor of former § 114, the result defendant seeks could not be reached. In *Salinger v. Loisel*, 265 U.S. 224, 44 S.Ct. 519, 68 L.Ed. 989 (1924), the defendant had been indicted for mail fraud occurring in the Southern Division of the District of South Dakota by a grand jury which, as now, had been impaneled from all four divisions. The Court rejected defendant's contention that under the statute, the grand jury had to have been drawn only from the division where the crime occurred, and approved the South Dakota grand jury scheme. Though no constitutional challenge was involved in *Salinger*, this Court finds no reason to vary the effect of that holding.

resents, a defendant's rights are in no way violated. Defendant does not contend that grand juries chosen under the South Dakota Plan do not fairly represent the district as a whole, and even if he did, the evidence (4.86% total Indian population in the district v. 3.8% Indian representation on grand jury panels) would not support such a contention.

Therefore, both the motion attacking the petit jury selection and the motion attacking the grand jury selection are denied.

## WHETHER DEFENDANT, ON THE SHOWING MADE, WAS ENTITLED TO EXHUMATION OF THE BODY OF THE VICTIM OF THE CRIME ALLEGED IN THE INDICTMENT?

█ The indictment alleges that the victim in this case, Lorenzo B. Hodgkiss, was beaten to death by defendant, Sylvan Meyers Big Crow, and Shirley Rose Larvie on April 15, 1979. Defendant's Motion for Exhumation, which was filed on November 14, 1979, contended that Lorenzo Hodgkiss had been stabbed twice by his brother, Aloysius Cyril Hodgkiss, immediately before the beating, and that the Final Autopsy Report on Lorenzo made no mention of any stab wounds.[4] Defendant argued that exhumation of the body and its examination by a pathologist was necessary to determine whether the stabbing was a cause of death. In support of his contentions, defendant attached several statements of witnesses to this stabbing incident, which statements were taken by the F.B.I. in the course of the investigation of another assault.

It seems to be within the inherent discretionary powers of a trial court "to order the disinterment of a corpse for evidentiary purposes in criminal cases." Annot., 63 A.L.R.3d 1294, 1300 (1975).

An exhumation is to be ordered only where it "appears to be absolutely essential to the administration of justice", 63 A.L. R.3d at 1302, and a certain amount of foundation is required to make this showing of

necessity. The point which most concerns this Court in passing on this motion is the length of time, seven months, between the decedent's death and the making of this motion. Defendant has introduced no evidence to show whether or not decedent's body was embalmed, what effect embalming may have had on the alleged knife wound, or that the body could be successfully examined at this late date to produce the sort of information defendant seeks. *Williams v. State*, 89 Okl.Cr. 146, 205 P.2d 1164 (1949); *Pope v. State*, 56 Okl.Cr. 57, 33 P.2d 813 (1934); *State v. Highland*, 71 W.Va. 87, 76 S.E. 140 (1912). Without this showing, this Court will not assume that any worthwhile evidence could be gained by disinterment, and will not intrude into the very real interest the family of the decedent has in his undisturbed repose.

The motion for exhumation is therefore denied.

---

4. Other than this allegation, no suggestion is made that the autopsy, conducted on April 16, 1979, by T. E. Henry, a pathologist with the Clinical Laboratory of the Black Hills at Rapid City, South Dakota, was other than complete and thorough.