**UNITED STATES of America, Appellee,**

v.

**David Collins CLIFFORD, Appellant.**

No. 80–1547.

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 17, 1980.

Decided Feb. 6, 1981.

---

James D. Leach, Rapid City, S. D., for appellant.

Terry L. Pechota, U. S. Atty., Jeffrey L. Viken, Asst. U. S. Atty., Sioux Falls, S. D., for appellee.

Before ROSS and HENLEY, Circuit Judges, and RENNER,* District Judge.

RENNER, District Judge.

David Collins Clifford appeals from his convictions for assault with a dangerous weapon, in violation of 18 U.S.C. §§ 113(c), 1153 (1976), and assault resulting in serious bodily injury, in violation of 18 U.S.C. §§ 113(f), 1153. Appellant asserts three errors as grounds for reversal: The trial court's refusal to admit proffered testimony of one Clifton Clifford; its failure to conduct adequate *voir dire* as to racial prejudice; and the failure to quash the venire. We affirm.

I.

The indictment was filed on December 12, 1979, charging Clifford with assault with a dangerous weapon with intent to do bodily harm by an Indian in Indian country (Count I), and with assault by an Indian in Indian

---

* The Honorable Robert G. Renner, United States District Judge for the District of Minnesota, sitting by designation.

country resulting in serious bodily injury (Count II). Jury trial commenced April 10, 1980, ultimately resulting in a verdict of guilty on both counts.[1] On June 23, 1980, the district court sentenced defendant to forty months imprisonment on Count I and forty months imprisonment on Count II, the sentences to run concurrently to each other but consecutively to an unrelated county jail term defendant was then serving in Rushville, Nebraska. On June 23, 1980, Clifford filed his Notice of Appeal.

## II.

This case arises out of an incident that occurred during the late evening hours of November 20, 1979. Clifford was attending a party on the Pine Ridge Indian Reservation in South Dakota. During the evening, Dale M. Brewer joined the party. Subsequently, appellant and Brewer engaged in "wrestling around" or "strongarming." Both men were armed, Clifford with a handgun and Brewer with a knife.

After Clifford and Brewer were first separated, Clifford struck Brewer on the side of the head with his gun. Brewer then approached Clifford and hit him several times. Clifford, in turn, pointed his gun at Brewer and fired, striking him in the left chest area.

## III.

Appellant contends that the trial court erred in excluding from evidence the proffered testimony of his cousin, Clifton Clifford. This testimony was offered in support of the appellant's position that the shooting was in self-defense. In particular, it was offered to explain why he was carrying a gun on the day of the shooting.

In an offer of proof, Clifton Clifford stated that he would testify: that as a tribal attorney he frequently represents people in tribal court charged with crimes involving assaults at parties; that sometimes weapons are involved; that homes or property are damaged or destroyed by firearms or other weapons; that many homes on the reservation have gunshot holes in them; that "some nights it's like Vietnam where I live [in Pine Ridge]"; that people at parties shoot holes in the walls and others get shot accidentally; that his son-in-law was just shot and killed and the policeman who shot him then shot himself; that most people in Pine Ridge keep weapons in their homes; that many people in Pine Ridge also carry firearms on their persons; that he sometimes, during the week, hears gunfire; and that much of the violence in Pine Ridge is related to the American Indian Movement and the "goons." The trial court excluded the testimony of Clifton Clifford as irrelevant, tending to confuse the issues, and for lack of foundation as to the witness' knowledge of these matters.

Appellant was then allowed to testify about his reasons for carrying the gun. He testified that he carries one when he goes to Pine Ridge because there are "a lot of crazy people" in Pine Ridge and "[y]ou never know what is going to happen down there." Following this testimony, defense counsel moved to recall Clifton Clifford to testify to the matters contained in the offer of proof; the trial court denied the motion.

■ Appellant argues that the refusal to allow Clifton Clifford to testify violated his Sixth Amendment right to "obtain witnesses in his favor." United States Constitution Amendment VI; see Faretta v. California, 422 U.S. 806, 818, 95 S.Ct. 2525, 2532, 45 L.Ed.2d 562 (1975); Washington v. Texas, 388 U.S. 14, 23, 87 S.Ct. 1920, 1925, 18 L.Ed.2d 1019 (1967); United States v. Peltier, 585 F.2d 314, 332 (8th Cir. 1978), cert. denied, 440 U.S. 945, 99 S.Ct. 1422, 59 L.Ed.2d 634 (1979). A criminal defendant does not, however, have the right to have evidence admitted that is irrelevant or otherwise inadmissible. Chambers v. Mississippi, 410 U.S. 284, 302, 93 S.Ct. 1038, 1049, 35 L.Ed.2d 297 (1973); United States v. Peltier, supra, 585 F.2d at 331–32. Determina-

---

1. The Honorable Donald J. Porter, United States District Judge for the District of South Dakota, Central Division, presiding.

tions of relevancy and admissibility are within the broad discretion of the trial court. *United States v. Holmes*, 594 F.2d 1167, 1172 (8th Cir.), *cert. denied*, 444 U.S. 873, 100 S.Ct. 154, 62 L.Ed.2d 100 (1979); *United States v. Kills Crow*, 527 F.2d 158, 160 (8th Cir. 1975).

■ The facts that appellant had a gun and that he shot Brewer are uncontroverted. His reason for carrying the gun does not pertain to "the existence of any fact that is of consequence to the determination of the action . . . ." Fed.R.Evid. 401. The mere possession of a gun simply does not go to the issue of whether its use is justified in self-defense. Appellant was given ample opportunity to explain his state of mind at the time of the shooting. The trial court concluded correctly that to admit into evidence testimony as to the climate of violence on the Pine Ridge Indian Reservation would only confuse the jury on the issue of defendant's state of mind.

The trial court's determination is supported by case law. In *United States v. Kills Crow, supra*, 527 F.2d at 160, we held that the district court did not abuse its discretion in excluding expert testimony on an alleged justification for a defendant's act not shown to be relevant to the defendant's mind at the time of the offense. The case of *United States v. Staggs*, 553 F.2d 1073 (7th Cir. 1977), relied on by defendant, provides similar support. In *Staggs* the Seventh Circuit held that the trial court erred in excluding as irrelevant crucial character evidence, admissible under Fed.R. Evid. 401, because it related directly to the defendant's subjective intention. *Id.* at 1075–76. The proffered testimony here, in marked contrast, was general in nature and only remotely related to the issue to be decided: whether Clifford acted in self-defense when he shot Brewer.

## IV.

Appellant also contends the trial court erred in failing to conduct adequate *voir dire* on racial prejudice. Prior to trial, Clifford proposed extensive *voir dire* questions relating to racial prejudice. The court refused to submit the specific requested questions, but conducted its own inquiry into the possibility of racial prejudice.[2] Appellant challenges the court's failure to question more particularly as to individual racial bias. *United States v. Bowles*, 574 F.2d 970, 973 n.3 (8th Cir. 1978). He asserts it was not a thorough examination as to prejudice against American Indians. *United States v. Long Elk*, 565 F.2d 1032, 1041 (8th Cir. 1977).

■ The trial court has broad discretion in deciding what questions to ask in jury *voir dire*. *Pope v. United States*, 372 F.2d 710, 725–27 (8th Cir. 1967). There is no constitutional requirement for *voir dire* on racial matters unless the circumstances suggest a significant likelihood that racial prejudice might infect trial. *Ristaino v.*

2. The trial court's inquiry was as follows:

Members of the jury of the panel, the American system of justice is based on the very fundamental fact that every person is an individual with inalienable rights and every person stands equal before the law, neither above or beneath the law. It is also based on the concept that each person, after all, of the 200 million individuals in the United States, each person is an individual with his or her own individual rights and that a court of law on a trial by jury that each person is to be judged exclusively on the evidence in that case and without any sort of prejudice for or against the person that is unrelated to the evidence. Have any of you members of the panel had any incident occur that you feel would in your background, in terms of contact either with the Government or a native

American such as the Defendant in this case which would prevent you from being fair and impartial?
[NO RESPONSE]

Do you feel, members of the panel, that although it happens that all members so far as appears, there are no native American Members of the panel in the thirty-one. If it turned out that we were to imagine a situation where you were on trial in the Federal Court being a different racial background than the native American, you were on trial before a jury of twelve native Americans, do you feel you could be just as fair in this case as you would want that jury to be in your case; is there anybody that could not?
[NO RESPONSE]

*Ross,* 424 U.S. 589, 598, 96 S.Ct. 1017, 1022, 47 L.Ed.2d 258 (1976). The trial court is required, however, to pose appropriate questions as to possible racial bias of prospective jurors when a defendant is a member of a racial minority. *Id.* at 597 n.9, 96 S.Ct. at 1022 n.9; *United States v. Bowles, supra,* 574 F.2d at 973 n.3; *United States v. Bell,* 573 F.2d 1040, 1043 (8th Cir. 1978). The sufficiency of the trial court's questions in eliciting appropriate and true responses are to be evaluated in the light of all the attendant circumstances. *United States v. Bear Runner,* 502 F.2d 908, 912 (8th Cir. 1974).

■ Clifford cites *Bear Runner* as support. This case, however is closer to *Bell* than *Bear Runner.* In *Bear Runner* the court took notice of certain publicized events involving American Indians that had occurred in western and central South Dakota within the year immediately preceding the trial. Against this factual background it was held that a single, general *voir dire* question directed to the panel as a whole was insufficient. *United States v. Bear Runner, supra,* 502 F.2d at 912.

In *Bell* the defendant, a black man, was tried before an all white jury. The trial court asked the prospective jurors three questions regarding possible racial bias, rejecting nineteen additional questions requested by the defendant, all but one of which concerned race. We held the trial court's refusal to ask the requested *voir dire* questions was a proper exercise of discretion. *United States v. Bell, supra,* 573 F.2d at 1043.

The passage of nearly six years since the time of *Bear Runner* has logically diminished the impact of the earlier publicized accounts. While we must be ever vigilant in our scrutiny as to potential prejudice, it need not always take the same form. Moreover, the issue of race is not inextricably involved in this case. Under these circumstances, we conclude the questions asked by the trial court adequately and properly examined, and would have revealed, any racial prejudice on the part of the potential jurors.

Our conclusion is supported by the trial court's invitation to the individual panel members to approach the bench and privately inform the court of any matter tending to have a bearing on their ability to render a fair and impartial verdict. Considering the totality of the trial court's *voir dire* questions, we are satisfied the court demonstrated a proper exercise of discretion. *United States v. Hamling,* 418 U.S. 87, 140, 94 S.Ct. 2887, 2918, 41 L.Ed.2d 590 (1974), cited in *Bell,* 573 F.2d at 1043.

V.

■ Finally, it is contended that there was error by the district court in denying appellant's pre-trial motion to quash the venire, in that it illegally underrepresented American Indians. The record made in *United States v. White Lance,* 480 F.Supp. 920 (D.S.D.1979), to the extent it pertained to appellant's motion was incorporated by reference. The trial court, in accordance with its ruling in *White Lance,* denied the motion.

The plan for selection of petit jurors in South Dakota provides for random selection from voter registration lists. In *White Lance, supra,* at 922, the trial court found that during the period from July 1977 through November 9, 1979, Indians living within the Central Division constituted 15.6% of the total population and 8.4% of the jurors sitting on petit juries. On these facts, appellant asserts the trial court should have found a violation of the Sixth Amendment and of 28 U.S.C. § 1863(b)(2).

The United States Supreme Court in *Duren v. Missouri,* 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979), set out the elements for a prima facie violation of the Sixth Amendment:

(1) [T]hat the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of the group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclu-

sion of the group in the jury-selection process.

*Id.* at 364, 99 S.Ct. at 668.

These standards are functionally equivalent to those used to enforce 28 U.S.C. § 1861, which states in part:

It is the policy of the United States that all litigants in Federal Courts entitled to trial by jury shall have the right to grand and petit jurors selected at random from a fair cross section of the community in the district or division wherein the Court convenes.

*Id.; see Taylor v. Louisiana*, 419 U.S. 522, 528–31, 95 S.Ct. 692, 696, 42 L.Ed.2d 690 (1975).

The initial issue is whether the 8.4% Indian representation on petit juries is fair and reasonable when related to their 15.6% proportion of the total population in the Central Division. The trial court concluded in *White Lance*, after consideration of the statistical concept of "absolute disparity," that no substantial disparity existed. 480 F.Supp. at 922–24. Under the absolute disparity calculation, the percentage of Indians on the list of persons eligible for petit jury service is subtracted from the percentage of Indians in the general population, resulting in a figure constituting the absolute difference. Here, the absolute disparity calculation showed a 7.2% underrepresentation (15.6%–8.4% = 7.2%).

Appellant contends that a more appropriate and accurate calculation of underrepresentation is the statistical concept of "comparative disparity." The comparative disparity concept measures underrepresentation by the percentage by which the probability of serving as a juror is reduced for people in a particular category or cognizable class. In this case, such a calculation would demonstrate 46% underrepresentation.[3]

Appellant strongly argues that under the absolute disparity calculation Indians could never be found to be substantially underrepresented in the Central Division; that the maximum underrepresentation that could be found under this calculation, if no Indians appeared on the list of eligible jurors, would be 15.6%. This figure, he contends, would never result in a finding of substantial underrepresentation.

Using either concept, the facts here do not prove a case of substantial underrepresentation. The Supreme Court indicated in *Swain v. Alabama*, 380 U.S. 202, 208–09, 85 S.Ct. 824, 829, 13 L.Ed.2d 759 (1965), that underrepresentation of as much as 10%, as calculated by the absolute disparity concept, does not constitute evidence of a prima facie case. This court has stated that in the absence of any evidence indicating an opportunity to discriminate in selection procedures, the 10% figure approved in *Swain* is an appropriate standard for finding underrepresentation. *Murrah v. State of Arkansas*, 532 F.2d 105, 109 (8th Cir. 1976) (quoting *Blackwell v. Thomas*, 476 F.2d 443, 447 n.7 (4th Cir. 1973)). Appellant does not contend that there was any such opportunity to discriminate in the selection process. The absolute disparity of 7.2% does not represent substantial underrepresentation.

■ This court has not seen fit to adopt the comparative disparity concept as a better means of calculating underrepresentation. However, even if this were not the case, the 46% comparative disparity figure asserted by Clifford does not rise to the level found to establish substantial underrepresentation. *United States v. Test*, 550 F.2d 577, 589 (10th Cir. 1976) (comparative disparity of 46% was not found to be substantial); *United States v. Armsbury*, 408 F.Supp. 1130, 1139 (D.Oregon 1976) (comparative disparities of 45.5% among blacks

---

**3.** The comparative disparity calculation is as follows:

$$\frac{\begin{array}{l}\text{Proportion of the}\\\text{population that is}\\\text{in the specified}\\\text{category}\end{array} - \begin{array}{l}\text{Proportion of the}\\\text{source that is in}\\\text{the specified}\\\text{category}\end{array}}{\begin{array}{l}\text{Proportion of the}\\\text{population that is}\\\text{in the specified}\\\text{category}\end{array}} \times 100$$

and 75% among Mexican-Americans were not found to be substantial underrepresentation). Without more, appellant has failed to carry his burden in establishing a prima facie case of substantial underrepresentation, *see United States v. Turcotte*, 558 F.2d 893, 895 (8th Cir. 1977), or the lack of a fair cross section of the community for the selection of petit juries. Neither the statute, 28 U.S.C. §§ 1861–1869 (1976 & Supp. II 1978), nor the Sixth Amendment require precise proportional representation of minority groups on jury panels. *See Swain v. Alabama, supra*, 380 U.S. at 208–09, 85 S.Ct. at 829; *United States v. Whiting*, 538 F.2d 220, 222 (8th Cir. 1976).

 The final element for a prima facie case requires that the underrepresentation be the result of systematic exclusion of a particular group in the jury-selection process. *Duren v. Missouri, supra*, 439 U.S. at 364, 99 S.Ct. at 668. It is Clifford's contention that the use of voter registration lists underrepresents Indians because a lower percentage of Indians than other persons register to vote. Since the only source is the voter registration lists, he argues the underrepresentation is inherent in the system.

We note initially that no evidence has been submitted establishing that the percentage of Indians registering to vote is less than any other group. However, applicant's claim, even if established, would be insufficient upon which to base a finding of an inherent defect in the system.

The Jury Selection and Service Act of 1968, 28 U.S.C. §§ 1861–69, provides that jurors be randomly selected from voter registration lists. The Act was intended to eliminate discriminatory and arbitrary selection practices and to ensure that jurors be selected from a representative cross section of the community. *See* H.Rep.No.1076, 90th Cong., 2d Sess., *reprinted in* [1968] U.S.Code Cong. & Admin.News 1792, *cited in United States v. Hanson*, 472 F.Supp. 1049, 1052 (D.Minn.1979), *aff'd*, 618 F.2d 1261 (8th Cir. 1980). Moreover, the random jury selection plan for the District of South Dakota has been approved by the Reviewing Panel of this Circuit. *United States v. Whiting, supra*, 538 F.2d at 222. The use of voter registration lists in almost every instance provides each qualified citizen an equal opportunity to be selected in random drawing to serve on a petit jury. *United States v. Hanson, supra*, 472 F.Supp. at 1054.

Appellant argues that the lists should be supplemented by other sources more accurately reflecting the Indian population in the Central Division. *See* 28 U.S.C. § 1863(b)(2). However, there has been no showing that juries are not selected from a fair cross section of the community or that there has been exclusion of jurors based on any basis other than failure to register to vote. Absent the showing of systematic exclusion of a class of qualified citizens, voter registration lists may be used as the sole source of persons to serve on petit juries. *Hallman v. United States*, 490 F.2d 1088, 1092 (8th Cir. 1973); *see United States v. Warinner*, 607 F.2d 210, 214 (8th Cir. 1979), *cert. denied*, 445 U.S. 927, 100 S.Ct. 1313, 63 L.Ed.2d 760 (1980). The mere fact that one identifiable group of individuals votes in a lower proportion than the rest of the population does not make a jury selection system illegal or unconstitutional. *United States v. Hanson, supra*, 618 F.2d at 1267 (quoting *United States v. Freeman*, 514 F.2d 171, 173 (8th Cir. 1975)).

The judgment of the trial court is affirmed.

---

The calculation in this case: