UNITED STATES of America, Appellee,

v.

**Carlos Javier GARCIA, Appellant.**

No. 92–2905.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 15, 1993.

Decided April 21, 1993.

Jerry Foxhoven, Des Moines, IA, argued, for appellant.

Ronald Kayser, Des Moines, IA, argued, for appellee.

Before JOHN R. GIBSON, Circuit Judge, BRIGHT, Senior Circuit Judge, and BOWMAN, Circuit Judge.

BOWMAN, Circuit Judge.

Carlos Javier Garcia was charged in a three-count indictment with conspiracy to distribute cocaine, distribution of cocaine, and money laundering. His motion challenging the constitutionality of the grand and petit jury empaneling process in the Southern District of Iowa was heard and denied by the District Court.[1] The jury found Garcia guilty on all three counts. Garcia appeals the resulting convictions, contesting the denial of his motion challenging the grand and petit jury empaneling process and raising an ineffective assistance of counsel claim. We affirm.

Garcia contends that the manner in which grand and petit juries are summoned in the Southern District of Iowa violates his constitutional right to a fair trial by a jury drawn from a cross-section of the community because African–Americans and Hispanics are not adequately represented in venires from which juries are selected.

Under the current Plan of the United States District Court For the Southern District of Iowa for Random Selection and Service of Grand and Petit Jurors Adopted Pursuant to the Jury Selection and Service Act of 1968 (the Plan or the Iowa Plan), names of prospective jurors are selected from voter registration lists as defined in 28 U.S.C. § 1869(c) (1988) or from lists of actual voters as defined in 28 U.S.C. § 1869(d) (1988). The clerk selects the names from the official records maintained by state or local officials and places them in the master jury wheel, which is emptied

---

**1.** The Honorable Ronald E. Longstaff, United States District Judge, Southern District of Iowa.

and refilled every four years. Jurors' names are randomly selected from the master wheel, and the selected jurors are asked certain questions to ensure that they are qualified to serve.

■ The Sixth Amendment guarantees a defendant in a criminal case a jury made up of a fair cross-section of the community. *Taylor v. Louisiana,* 419 U.S. 522, 530, 95 S.Ct. 692, 697, 42 L.Ed.2d 690 (1975). Although the Constitution prohibits purposeful exclusion of an identifiable racial group from the juror-selection process, there is "no requirement that petit juries actually chosen must mirror the community and reflect the various distinctive groups in the population." *Id.* at 538, 95 S.Ct. at 702. In order to establish a prima facie violation of *Taylor's* fair-cross-section requirement, Garcia must show:

> (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

*Duren v. Missouri,* 439 U.S. 357, 364, 99 S.Ct. 664, 668, 58 L.Ed.2d 579 (1979).

■ "A group of people is distinct when they have a shared attribute that defines or limits their membership, and when they share a community of interest." *United States v. Black Bear,* 878 F.2d 213, 214 (8th Cir.1989). It is clear that Hispanics and African–Americans are distinctive

groups in the community, *see Castaneda v. Partida,* 430 U.S. 482, 97 S.Ct. 1272, 51 L.Ed.2d 498 (1977) (Mexican–Americans); *Peters v. Kiff,* 407 U.S. 493, 92 S.Ct. 2163, 33 L.Ed.2d 83 (1972) (African–Americans), so Garcia has cleared the first hurdle toward establishing a prima facie case.

Next, Garcia must show that the representation of these groups in the venires from which juries are selected is not fair and reasonable in relation to their number in the community. Garcia submitted evidence indicating that African–Americans and Hispanics were underrepresented, and he analyzed the numbers to determine the probability that the underrepresentation occurred by chance.[2] We decline to address this issue because Garcia has failed to meet the third part of the *Duren* test. Without commenting on the validity of Garcia's statistics or on the statistical results that he reaches, we move on to the "systematic exclusion" requirement of *Duren.*

Garcia must show that the group is underrepresented in the jury-selection process due to systematic exclusion. *Duren,* 439 U.S. at 364, 99 S.Ct. at 668. In order to prove systematic exclusion, Garcia must show the exclusion is "inherent in the particular jury-selection process utilized." *Id.* at 366, 99 S.Ct. at 669. Garcia contends that his statistics establish a five-year pattern of underrepresentation, and the underrepresentation results from the Southern District's use of voter registration lists to select potential jurors. Further, Garcia argues that in *Castaneda v. Partida* the Supreme Court required only a showing of substantial underrepresentation as opposed to systematic exclusion, and that other

**2.** Using the 1990 Census, Garcia presented the following population evidence: Hispanics represented .936% and African–Americans represented 1.869% of the general population in the Central Division of the Southern District of Iowa. Using statistics from the jury clerk in the Southern District of Iowa, Garcia submitted the following evidence: 1) zero Hispanic citizens and one African–American citizen were included in the grand jury pool of fifty from which the grand jury which indicted Garcia was selected; 2) three Hispanic citizens and eleven African–American citizens were in the Central Division qualified jury pool of 700 for the six-month period of September 1991 to March 1992; and

3) forty-one Hispanic citizens and seventy African–American citizens were included in the Central Division petit jury pool of 5,424 jurors from March 1987 to March 1992. Garcia included numerous calculations and statistical results in his brief upon which we do not comment because of our other findings.

Garcia also presented testimony from Dr. Mack C. Shelley, Ph.D., a statistician from Iowa State University. Using Garcia's figures, Dr. Shelley conducted certain statistical evaluations and concluded that it was relatively unlikely that the underrepresentation of African–Americans and Hispanics in the jury pools occurred by chance.

courts have held that systematic exclusion may be inferred from continued underrepresentation.

Initially we note that Garcia has not convinced us that African–Americans and Hispanics are "substantially" or "continually" underrepresented. Furthermore, the facts in *Castaneda* are readily distinguishable from the facts in this case. In *Castaneda*, the Texas "key-man" system of selecting jurors was challenged in a county which was 79.1% Mexican–American, but in which over an eleven-year period only 39% of the persons summoned for grand jury service were Mexican–American. 430 U.S. at 495, 97 S.Ct. at 1280. *Castaneda* is pre-*Duren* so the Court did not discuss *Duren*'s systematic exclusion requirement; the Court did not hold that numerical underrepresentation is a substitute for systematic exclusion. Furthermore, the Court found an absolute disparity of 40%, *Castaneda*, 430 U.S. at 495, 97 S.Ct. at 1280, compared to the less than 1% absolute disparity in this case. Finally, the Court bolstered its conclusion by noting that the jury selection system at issue was "highly subjective," *id.* at 497, 97 S.Ct. at 1281–82, in contrast with the random selection process at issue here. Thus Garcia's reliance upon *Castaneda* is misplaced.

The use of voter registration lists to select jury pools, the method which the Plan at issue uses, has consistently been approved by this Circuit. *See, e.g., United States v. Clifford*, 640 F.2d 150 (8th Cir. 1981); *United States v. Freeman*, 514 F.2d 171 (8th Cir.1975). In *Clifford*, this Court was presented with a challenge to South Dakota's jury-selection process. South Dakota had a random selection process from voter registration lists, similar to the Iowa Plan, and the complainants argued that Native Americans were systematically underrepresented (absolute disparity of 7.2%) because a lower percentage of Native Americans registered to vote. *Clifford*, 640 F.2d at 155, 156. Garcia makes the same argument here as to African–Americans and Hispanics. We reiterate our conclusion from *Clifford* that "[t]he mere fact that one identifiable group of individuals votes in a lower proportion than the rest of the population does not make a jury selection system illegal or unconstitutional." *Id.* at 156.

Garcia does not contend that Iowa law imposes any suspect voter registration qualifications or that the Plan is administered in a discriminatory manner. Garcia has not made any showing that African–Americans or Hispanics are systematically excluded from the jury-selection process. A numerical disparity alone does not violate any of Garcia's rights and thus will not support a challenge to the Iowa Plan. Accordingly, we affirm the District Court's rejection of Garcia's attack upon the Plan.

■ Garcia also contends that he was denied effective assistance of counsel by his trial attorney. An ineffective assistance of counsel claim is properly raised in a petition for habeas corpus relief in district court and ordinarily is not properly raised initially on direct appeal. *See, e.g., Schmidt v. United States*, 987 F.2d 536, (8th Cir.1993). Here, however, we will address Garcia's claim based on the record before us because, as both parties acknowledged at oral argument, the record is already clearly developed and a decision now will obviate the need for further proceedings in the trial court and a further appeal.

In *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984), the Supreme Court set out the following two-part test that Garcia must meet to succeed in his claim: first, that his counsel's performance was deficient, and second, that the deficient performance prejudiced the defense so as to deprive him of a fair trial. The Court further stated, "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.... If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice ... that course should be followed." *Id.* at 697, 104 S.Ct. at 2069.

■ Garcia contends that he suffered prejudice because trial counsel failed to secure certain documents and witnesses that were crucial to his defense and that

counsel knew about long before trial. Garcia contends that he was prejudiced because the witnesses and documents would establish that he had other sources of income and that he therefore did not need to deal drugs. We are not convinced by this argument. Garcia was convicted of two drug offenses and one money laundering offense. The government produced three key witnesses who described in detail first-hand drug transactions with Garcia, and numerous other witnesses whose testimony tended to show his guilt. We fail to see any possibility of a different outcome at trial had counsel produced the desired witnesses and documents. Accordingly, Garcia's claim of ineffective assistance of counsel is denied.

For the reasons stated above, the judgment of the District Court is affirmed.