36 F.3d 1095
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
VIGILANT INSURANCE COMPANY, a New York Corporation, Plaintiff-Appellee,
v.
CLAY PROPERTIES, INCORPORATED, a District of Columbia
Corporation; Ozzie Clay, Defendants-Appellants,
v.
CHUBB & SON, INCORPORATED, Defendant-Appellee.
 No. 93-2353.
 United States Court of Appeals, Fourth Circuit.
 Argued May 12, 1994.
Decided Sept. 27, 1994.
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Claude M. Hilton, District Judge. (CA-92-820-A)
 Argued John A. Field, III, McLean, VA, for appellants.
 James Curie Skilling, Cherry, Seymour & Ross, Richmond, VA, for appellees.
 On brief: Robert Tayloe Ross, Cherry, Seymour & Ross, Richmond, VA, for appellees.
 E.D.Va.
 AFFIRMED.
 Before MURNAGHAN and NIEMEYER, Circuit Judges, and ERWIN, Senior United States District Judge for the Middle District of North Carolina, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 Clay Properties, Incorporated and Ozzie Clay appeal from a jury verdict in favor of Appellees, Vigilant Insurance Company and Chubb & Son, Incorporated. Clay contends that numerous trial errors warrant a new trial. We find that the record supports the trial court and affirm.
 
 
 2
 * This action was initiated by Vigilant Insurance Company (Vigilant) in a Complaint seeking declaratory relief against Clay Properties, Incorporated and Ozzie Clay,* president and managing agent of Clay Properties, Incorporated. Vigilant issued an insurance contract to Clay covering its real and personal property. The nexus of Clay's claims for insurance proceeds arose from property loss due to a fire. Vigilant asserted that the insurance contract was void ab initio based upon arson and Clay's material misrepresentations in submission of claims.
 
 
 3
 Clay failed to answer or otherwise defend Vigilant's action after proper service. The trial court, after an extensive hearing, entered default judgment and found that Clay had willfully and intentionally avoided service of process. Judge Ellis found that Clay had exhibited willful and knowing disregard for the legal system and the procedures that are necessary to ensure its proper functioning. Contrary to Clay's suggestion, Mr.Clay is a sophisticated businessman with in-house counsel and an accountant and is not unfamiliar with litigation. See e.g., Clay Properties, Inc. v. Washington Post Co., 604 A.2d 890, 899 n. 23 (D.C.1992) (en banc) (fraud issue raised).
 
 
 4
 Default judgment was subsequently vacated. Clay was granted leave to file an answer and counterclaim, which had been previously lodged with the district court on October 14, 1992. Clay named Chubb & Son, Inc. (Chubb) as a counterclaim defendant. Chubb, however, had no independent obligation to Clay and was only Vigilant's agent. Chubb investigated and adjusted claims made by the insured pursuant to insurance contracts.
 
 
 5
 Clay noticed the depositions of Vigilant's lead counsel, Mr.Robert Tayloe Ross and Mr.James C. Skilling. Later, the files of Mr.Ross and Mr.Skilling were subpoenaed, and Vigilant immediately filed a motion to quash the notice of depositions and subpoenas and moved for a protective order. Clay's belated attempt to depose trial counsel was based upon a single conversation Mr.Ozzie Clay had with Mr.Ross prior to Vigilant's filing its Complaint on June 9, 1993.
 
 
 6
 Extensive discovery was conducted, and on the first day of trial, Clay raised the issue of calling Mr.Ross and Mr. Skilling as witnesses at trial. Mr.John A. Field, III, Clay's counsel, specifically stated that he did not intend to call Vigilant's trial counsel as witnesses unless Mr.Clay's credibility was attacked pertaining to any general issue regarding conversations that he may have had with Mr.Ross. Judge Hilton specifically reserved ruling on this issue. After presenting extensive evidence and selecting witnesses to testify, Clay did not call Mr.Ross to testify. In spite of Vigilant's objection, Clay then attempted to introduce into evidence the altered, incomplete, and edited transcript of the telephone conversation between Clay and Ross. Vigilant's objection was sustained, and the transcript was ruled inadmissible. Our review of the record reveals that the district court never excluded Mr.Ross as a witness because he was never called to testify.
 
 
 7
 The case went to the jury on Vigilant and Chubb's defenses of arson and material misrepresentation and upon Clay's counterclaims for breach of contract. The district court granted Vigilant's Motion for a Directed Verdict on Appellants' Bad Faith Claim. The jury returned a verdict in favor of Vigilant and Chubb and against Clay.
 
 II
 
 8
 Clay contends that the jury venire from which the petit jurors were selected did not constitute a fair cross-section for the Alexandria Division of the Eastern District of Virginia. The record does not show from what sources the jury list was constituted. Therefore, Clay erroneously asserts that by using voter registration as a basis for the jury pool, the Alexandria Division of the Eastern District of Virginia systematically excluded minorities from the list of eligible jurors. This court, in United States v. Cecil, 836 F.2d 1431, 1454 (4th Cir.1988), specifically held that the use of voter registration lists in the jury selection process in this circuit, "[has] been approved, as satisfying the fair cross-section requirement of the statute and the Constitution." The sole use of voter registration lists to select jury pools has been consistently approved. See, e.g., Floyd v. Garrison, 996 F.2d 947, 949 (8th Cir.1993); United States v. Garcia, 991 F.2d 489, 492 (8th Cir.1993).
 
 
 9
 Clay claims that the sole African-American juror was removed by Vigilant because of her race. In Batson v. Kentucky, 476 U.S. 79 (1986), the Supreme Court enunciated standards for determining whether a party's preemptory strike was precipitated by a racial motive. Not only must a party first show that he is a member of a cognizable racial group and his opponent has used a preemptory strike to remove a venire member of his race, but that party must show "other relevant circumstances" to raise an inference that his opponent used a preemptory strike to exclude the venire juror from the petit jury on account of his race. Batson, 476 U.S. at 96. Our review of the record indicates that Clay failed to establish a prima facie case of discrimination which would shift the burden to Vigilant to articulate a race-neutral explanation for its preemptory strike. Id. at 97; see also United States v. Lane, 866 F.2d 103, 105 (4th Cir.1989) (a prima facie case does not necessarily arise each time a prosecutor strikes an African-American prospective juror). Despite Clay's failure to make a prima facie case, Vigilant gave a legitimate race-neutral explanation for striking the venire juror.
 
 
 10
 Finally, Clay makes numerous claims with respect to errors in the instructions to the jury. Our review of the record indicates that the district court's charges were proper and in accordance with federal and the applicable substantive Virginia Law.
 
 
 11
 The judgment of the district court is affirmed.
 
 
 12
 AFFIRMED.
 
 
 13
 MURNAGHAN, Circuit Judge, concurring in part and concurring in the judgment:
 
 
 14
 I concur in the judgment and write separately only to explain why I believe that Vigilant's use of a peremptory challenge to exclude the sole African-American venireperson from the jury did not violate the Equal Protection Clause, as interpreted in Batson v. Kentucky, 476 U.S. 79 (1986), and its progeny. The majority holds that "Clay failed to establish a prima facie case of discrimination which would shift the burden to Vigilant to articulate a race-neutral explanation for its peremptory strike." Ante, at 4-5. The majority then goes on to state, perhaps as an alternative holding, that "Vigilant gave a legitimate race-neutral explanation for striking the venire juror." Id. I believe that the first statement is unnecessary, and that the second demands further elaboration. Together, the two statements imply that Clay's Batson claim is somewhat weaker than I believe it to be.
 
 
 15
 Vigilant, the plaintiff, used one of its peremptory challenges to eliminate the venire's only black member. Defendant Clay objected, alleging racial discrimination.[1] Vigilant's attorney explained that he had struck the venire member not because she was black, but because she, like Clay, was a single parent with one son. Clay's attorney responded by arguing that peremptory challenges based on single-parenthood would disproportionately impact black prospective jurors.
 
 
 16
 The district court overruled Clay's objection, and the all-white jury subsequently rendered a verdict in favor of Vigilant and against Clay. Clay appealed, contending that the peremptory challenge had violated the black venireperson's constitutional right to equal protection of the laws and therefore justified a reversal and remand.
 
 
 17
 The Supreme Court has outlined a three-step process for evaluating a private civil defendant's claim that the plaintiff exercised a peremptory challenge in a racially discriminatory manner. First, the defendant must make a prima facie showing that the plaintiff exercised a peremptory challenge on the basis of race. Second, if the defendant has made the requisite showing, the burden shifts to the plaintiff to articulate a race-neutral explanation for striking the juror in question. And third, the trial court must determine whether the defendant has carried his burden of proving intentional discrimination, i.e., that the plaintiff struck the juror because of the juror's race. See J.E.B. v. Alabama ex rel. T.B., 114 S.Ct. 1419, 1429-30 (1994); Edmonson v. Leesville Concrete Co., 500 U.S. 614, 631 (1991); Hernandez v. New York, 500 U.S. 352, 358-59 (1991) (plurality opinion); Batson, 476 U.S. at 96-98.
 
 
 18
 In Hernandez v. New York, a criminal case, Justice Kennedy, speaking for a four-Justice plurality, stated: "Once a prosecutor has offered a race-neutral explanation for the peremptory challenges and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant has made a prima facie showing becomes moot." Id. at 359. Similarly, we have repeatedly refused to "examine whether the defendant has met his burden in establishing a prima facie case where the prosecutor articulates reasons for his strikes." United States v. McMillon, 14 F.3d 948, 952 (4th Cir.1994); accord United States v. Joe, 928 F.2d 99, 103 (4th Cir.), cert. denied, 112 S.Ct. 71 (1991); United States v. Lane, 866 F.2d 103, 105 (4th Cir.1989). In the present case, the plaintiff's attorney responded to the defense counsel's objection by proffering an explanation for the peremptory strike, and the district court proceeded to rule on the ultimate question of intentional discrimination. Therefore, on appeal we need not, and should not, address the question of whether Clay established a prima facie case of discrimination.
 
 
 19
 Rather, we should assume that Clay made a prima facie showing and proceed directly to the second and third steps of the Batson inquiry. In the second step, we must determine whether the explanation articulated by the plaintiff's attorney was facially race-neutral, as a matter of law. I think that it was. Vigilant's counsel told the district judge that the venireperson in question, like defendant Clay, was a single parent raising a young son and thus may have had "undue empathy" for Clay.[2] By its unadorned language, the plaintiff's stated rationale was race-neutral and, therefore, valid as a matter of law.
 
 
 20
 Next we must proceed to the third step of the Batson inquiry and consider whether the plaintiff's stated rationale, notwithstanding its facial race-neutrality, was, as a matter of fact, a mere pretext for intentional race-based discrimination. The district court found that Vigilant's explanation was not pretextual, and that therefore Clay had failed to carry his burden of proving intentional discrimination. In reviewing the district court's factual findings, we recognize that only the trial judge could evaluate the demeanor and credibility of the attorney who exercised the challenge. Therefore, the district court's factual findings are entitled to great deference and may not be overturned unless clearly erroneous. See Hernandez, 500 U.S. at 363-70 (plurality opinion); Batson, 476 U.S. at 98 n. 21; United States v. Grandison, 885 F.2d 143, 146 (4th Cir.1989), cert. denied, 495 U.S. 934 (1990); United States v. Mitchell, 877 F.2d 294, 303 (4th Cir.1989).
 
 
 21
 After hearing Vigilant's facially race-neutral explanation for the strike, the district judge gave Clay's attorney the opportunity to show that Vigilant's proffered explanation was merely pretextual and that a racially discriminatory motive was in fact the reason behind the strike. See McMillon, 14 F.3d at 952 (requiring the judge to afford the defendant such an opportunity). Clay's attorney noted that the challenged venireperson was the only black on the entire panel. Moreover, he argued, if being a single parent of a young boy was a valid reason for excluding her from the jury, then a large percentage of blacks would be similarly excluded. In other words, although Vigilant's explanation was racially neutral on its face, its repeated application would have a disparate impact upon blacks.
 
 
 22
 Clay's disparate-impact argument is relevant to the question of discriminatory intent. See Hernandez, 500 U.S. at 363 (plurality opinion) ("If a prosecutor articulates a basis for a peremptory challenge that results in the disproportionate exclusion of members of a certain race, the trial judge may consider that fact as evidence that the prosecutor's stated reason constitutes a pretext for racial discrimination.").[3] However, Clay's disparate-impact argument is not dispositive. In J.E.B., supra, the decision that extended Batson from race to gender, the Court stated that "[e]ven strikes based on characteristics that are disproportionately associated with one gender could be appropriate, absent a showing of pretext." 114 S.Ct. at 1429. In a footnote, the Court added:
 
 
 23
 For example, challenging all persons who have had military experience would disproportionately affect men at this time, while challenging all persons employed as nurses would disproportionately affect women. Without a showing of pretext, however, these challenges may well not be unconstitutional, since they are not genderor race-based.
 
 
 24
 Id. at 1429 n. 16 (citing Hernandez, supra ); see United States v. Changco, 1 F.3d 837, 840 (9th Cir.) ("Whether a particular reason for striking jurors has a disproportionate effect on minorities is relevant to figuring out whether intentional discrimination has occurred; but disparate impact does not, by itself, a Batson violation make."), cert. denied, 114 S.Ct. 619 (1993); United States v. Uwaezhoke, 995 F.2d 388, 393 (3d Cir.1993) ("[T]he role of disparate impact in the Batson analysis is as circumstantial evidence of discriminatory intent ... and not as a controlling legal factor ...."), cert. denied, 114 S.Ct. 920 (1994); see also id. ("If the government's explanation, generally applied, would have a disparate impact on a particular racial group, ... a trial judge [should] exercise special scrutiny during the third step of the Batson process to determine whether intentional discrimination, as a matter of fact, underlies the government's peremptory challenge.").
 
 
 25
 Had Clay's attorney shown that Vigilant had allowed a white single parent to sit on the petit jury while striking the only black venireperson supposedly because of her status as a single parent, Clay would have had a much stronger case of pretext. But he neither made, nor attempted to make, such a showing. Nor did the district judge inquire sua sponte whether Vigilant had struck all single parents, black and white alike. He simply listened to both counsels' arguments, and then found that Vigilant had articulated "a legitimate nondiscriminatory reason" for striking the lone black venireperson and that Clay had failed to show pretext and to carry his burden of proving intentional discrimination on the basis of race. Thus, he denied Clay's Batson motion. Because the district court did not clearly err in choosing to believe the plausible reason that Vigilant's attorney had articulated, see Hernandez, 500 U.S. at 372 (plurality opinion), I would affirm the ruling of the district court. Therefore, I respectfully concur.
 
 
 
 *
 Clay Properties, Incorporated and Ozzie Clay hereinafter will be referred to as "Clay."
 
 
 [1]
 Vigilant's in-court corporate representative, trial counsel, and support staff at trial were all white. Clay, key witnesses in his favor, and the sole minority venire member were black
 
 
 [2]
 Much of the case would revolve around Clay's efforts to make alternative living arrangements for his then fourteen-year-old son in the wake of the fire that destroyed their home. Indeed, before trial, Clay had told Vigilant that its delay in paying his insurance claim was adversely affecting his son, who, for lack of privacy, had to do his homework in the bathroom of the hotel room that Clay and his son shared for six weeks following the fire
 
 
 [3]
 See also id. at 376 (Stevens, J., joined by Marshall, J., dissenting) ("An avowed justification that has a significant disproportionate impact will rarely qualify as a legitimate, race-neutral reason sufficient to rebut the prima facie case because disparate impact is itself evidence of discriminatory purpose.")