# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-2122

_____

| | | |
|---|---|---|
| Joseph Boston, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the Western |
| | * | District of Missouri. |
| Michael Bowersox, Superintendent; | * | |
| Jeremiah (Jay) Nixon, Attorney General, | * | [PUBLISHED] |
| State of Missouri, | * | |
| | * | |
| Appellees. | * | |

_____

Submitted: September 15, 1999
Filed: November 26, 1999

_____

Before BEAM, HEANEY, and FAGG, Circuit Judges.

_____

PER CURIAM.

Joseph Boston, a Missouri prisoner, appeals the district court's order denying Boston's petition for writ of habeas corpus. See 28 U.S.C. § 2254 (1996). We affirm.

On appeal, Boston contends his criminal trial was constitutionally flawed because the jury panel selected for his case did not represent a fair cross-section of the community. In denying Boston's § 2254 petition, the district court stated:

The Missouri Court of Appeals rejected [Boston's fair cross-section claim because]: "The selection of jurors here, although irregular and not strictly by statute, did not destroy the randomness of the selection procedure. The procedure used substantially complied with the statute, and the jury that served was [a] fair cross-section." [State v. Boston, 910 S.W.2d 306, 313 (1995)].

The state court's resolution of [Boston's] claims regarding jury composition was not based upon "an unreasonable determination of the facts in light of the evidence" or a misapplication of "clearly established Federal law."  28 U.S.C. § 2254(d)(1) and (2).

Having considered the record, the briefs, and the parties' arguments, we agree that the jury selection process was a random one because, as Bowersox states in his brief, "the jury's supervisor['s decision to] sen[d] the first forty-five members of the 'qualified jury list' to arrive at the courthouse to [the trial judge's courtroom for jury selection in Boston's case] . . . was not race-based or gender-based; instead, it was numerical . . . and there was certainly no systematic exclusion."  See Duren v. Missouri, 439 U.S. 357, 364 (1979) (to establish violation of fair cross-section requirement, petitioner must show distinctive group in community was systematically excluded in jury selection process).

We thus affirm the district court's denial of Boston's petition for writ of habeas corpus.  See 8th Cir. R. 47B.

HEANEY, Circuit Judge dissenting.

Boston's jury panel was selected by his trial court judge, who demanded that the first forty-five potential jurors who reported for service be sent to his courtroom. Boston complains that this selection process resulted in a panel of potential jurors that did not represent a fair cross-section of his community.  The majority, the district court, and the Missouri Court of Appeals have all upheld the constitutionality of the jury panel

selection process in Boston's case, basing their respective opinions on the conclusion that the selection process employed was random. I disagree, and respectfully dissent.

## I.

In Missouri, each county has a board of jury commissioners responsible for ensuring that the county's jury panels are selected from a fair cross-section of the community. See Mo. Ann. Stat. §§ 494.400, 494.405 (West 1996). Jackson County employs an elaborate jury panel selection system to fulfill its statutory and constitutional requirements. Each year, a list of approximately 500,000 eligible jurors drawn from taxpayers, voters, and licensed drivers is compiled by the court administrator. The Missouri Supreme Court then meets en banc to blindly choose a number at which to start the jury list, further narrowing the pool to roughly 100,000 people.

Jackson County's Jury Supervisor estimates the number of potential jurors needed for a given court week, which is usually about 600. To request jurors, the Supervisor's assistants choose a number between zero and 200. That number is then written on a card, given to the computer operations department, and fed into the department's computer. A computer program uses this number to randomly select the required number of potential jurors, who are then summoned for service. Of those summoned, normally between 225 to 240 people report for service.

Upon arrival, the potential jurors are checked in and shown an orientation film. Finally, from these potential jurors, a jury panel for each respective trial court is randomly selected by computer.

II.

The majority implies that a random jury panel selection procedure will always result in a panel that satisfies the fair cross-section requirement. I am not inclined to paint with such a broad brush. However, even if I agreed, I would nevertheless find fault with the result in this case. A criminal defendant is entitled to select a jury from a fair cross-section of the community. See Taylor v. Louisiana, 419 U.S. 522, 528 (1975). A jury panel selection process that randomly chooses qualified jurors often satisfies the fair cross-section requirement. See United States v. Garcia, 991 F.2d 489, 492 (8th Cir. 1993); see also United States v. Clifford, 640 F.2d 150, 156 (8th Cir. 1981) (concluding that purpose of random selection procedure in Jury Selection and Service Act of 1968, 28 U.S.C. §§ 1861-1869, was to ensure jurors were selected from representative cross-section of community).

I have no quarrel with Jackson County's procedure for summoning potential jurors for service or its system for selecting jury panels. These procedures, it seems to me, are truly random, since they have no specific pattern or purpose. See Webster's II New Riverside University Dictionary 973 (1994) (defining random as that "having no specific pattern, purpose, organization, or structure"). Here, however, the trial court deviated from the county's jury selection process and instead employed its own procedure. Therefore, we must decide not whether the county's system was valid, but whether the system actually used in Boston's case was constitutional.

The majority concludes that the trial court's selection process was random. I disagree. The process followed a specific pattern, namely, the panel was chosen on the basis of which members of the jury pool were the first to arrive at the courthouse. I acknowledge that we have approved the use of certain criteria to determine who is qualified to serve as a juror in the past. See Garcia, 991 F.2d at 492 (upholding process whereby jury pool is comprised solely of registered voters). However, I cannot

-4-

say that the selection process in this case, in which the trial judge himself decides which jurors will serve as his panel based on his own criteria, is in any way random.

## III.

Generally, to establish a prima facie violation of the fair cross-section requirement, a defendant must show that: (1) the group alleged to be excluded from service is a "distinctive group" in the community, (2) representation of this group in panels from which juries are selected is not fair and reasonable considering the number of such persons in the community, and (3) underrepresentation is due to systematic exclusion in the jury selection process. See Duren v. Missouri, 439 U.S. 357, 364 (1979).

First, it is without question that African-Americans are a distinctive group in the community. See Garcia, 991 F.2d at 491 (8th Cir. 1993).

Next, a comparative examination of the racial composition of Boston's panel reveals that African-Americans were not fairly represented. Census figures indicate that 21.4% of Jackson County's population is African-American. The master list of potential jurors who checked in for service on the date of Boston's trial has no notation as to race, but the record reveals evidence of the racial composition of three petit juries empaneled on the same day as Boston's jury.[1] Out of thirty-six jurors, eight were African-American, or 22.2%. By comparison, Boston's panel of forty-five potential jurors contained only two African-Americans, or 4.4%. Boston's petit jury contained

---

[1]I concede that the comparison of one's jury panel to another's petit jury is not ideal, but due to the county's failure to keep figures on the racial makeup of its jury pools, I am persuaded that in this case the comparison is the most accurate one available.

no African-Americans.[2]   The stark contrast between the racial makeup of Boston's panel when compared to Jackson County and the other petit juries empaneled on the same day strongly suggests that the process employed by the trial judge excluded African-Americans.

As to the third element of a prima facie violation, the majority asserts that Boston should be denied relief because he has not carried his burden of showing that the exclusion of any distinct group was systematic.  Systematic exclusion means that the underrepresentation of certain groups is "inherent in the particular jury-selection process utilized."  Id. at 366.  Proof of systematic exclusion is an appropriate requirement when, as in Duren, a defendant challenges a jury selection process employed regularly or uniformly throughout a jurisdiction.  See id. at 360-63.  A defendant in that circumstance could easily produce evidence of the demographic makeup of other jury panels within the jurisdiction, because all panels would be selected in the same manner.  However, where one judge deviates from the approved selection process employed in his jurisdiction and instead uses his own system, I believe we must approach the issue in a different way.  The relevant inquiry is whether the process used by the particular judge is constitutional.  In such a case, a defendant could not collect evidence of a pattern of underrepresentation unless, of course, the maverick judge consistently follows his own system.

Boston's case was the first time this trial judge used his "first come, first to serve" selection process.  He subsequently used this selection process only once.  Because it would be impossible for Boston to establish a system-wide pattern from a

_____

[2]Although the absence of a distinctive group on a petit jury is not by itself sufficient to establish a fair cross-section violation, see Lockhart v. McCree, 476 U.S. 162, 173-74 (1986), the makeup of Boston's petit jury further suggests that he was deprived his right to a jury selected from a representative cross-section of the community.

-6-

process employed only twice, it makes no sense to reject Boston's claim on this basis.[3] I believe Boston has presented sufficient evidence of a prima facie violation of his right to a jury chosen from a fair cross-section of his community.

IV.

The state could rebut a prima facie fair cross-section violation by presenting evidence that the process complained of primarily and manifestly advanced a significant state interest. See Duren, 439 U.S. at 368. I do not believe the state could present evidence justifying the trial court's practice. The only argument that the state could possibly make is that a state trial court must have the ability to start a trial early in the morning if it sees fit, and that this overrides a defendant's right to a jury representing a fair cross-section of the community. Certainly, a trial court judge can decide that he wants a jury panel to report earlier than the usual assigned time. However, this could be easily accomplished without compromising the elaborate procedures in place to ensure a random jury selection. For example, a trial judge could simply ask the Jury Supervisor to make a computer selection of a panel prior to the date of the trial and direct those who were selected to arrive early. It is apparent to me, therefore, that Boston is entitled to a new trial.

Jackson County's scheme for juror selection meets constitutional standards. This court should not permit an individual judge to destroy the integrity of the county's system and deprive a defendant of a jury selected from a fair cross-section of the community.

---

[3]I agree that generally "[e]vidence of a discrepancy on a single venire panel cannot demonstrate systematic exclusion." Singleton v. Lockhart, 871 F.2d 1395, 1399 (8th Cir. 1989). However, when a defendant is precluded from introducing evidence of a system-wide pattern, a glaring discrepancy on his particular jury panel is strong evidence of a fair cross-section violation.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.